## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIM. NO.  15-cr-346S** |
| | § | |
| **VS.** | § | |
| | § | |
| **MKRTICH M. YEPREMIAN (1),** | § | |
| **A.K.A. MIKE YEPREMIAN,** | § | |
| **Defendant** | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Suzanne Bradley, Special Assistant United States Attorney, and Defendant Mkrtich M. Yepremian, a.k.a. Mike Yepremian, and Defendant's counsel, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### The Defendant's Agreement

1.      Defendant agrees to plead guilty to Count 1 and 23 of the First Superseding Indictment.  Count 1 charges Defendant with conspiracy to commit health care fraud, in violation of Title 18, United States Code,  §§ 1349 and 1347; Count 23 charges Defendant with violations of the kickback statute, in violation of

1

42 United States Code § 1320a-7b(b)(2). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Superseding Indictment or proven to a jury or judge beyond a reasonable doubt.

## Punishment Range

2.     The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 1349 is a term of imprisonment of not more than 10 years and a fine of not more than $250,000, or twice the pecuniary gain or loss pursuant to 18, United States Code, section 3571(d), whichever is greater.  The **statutory** maximum penalty for a violation of 42 United States Code § 1320a-7b(b)(2)  is up to 5 years in prison, a fine of not more than $25,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years.  Title 18, United States Code, §§ 3559(a) and 3583(b).  Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. Title 18, United States Code, §§ 3559(a) and 3583(e)(3).  Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of two hundred dollars ($200.00), representing a $100 per count of conviction.  The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas  77208, Attention: Finance.

## Immigration Consequences

4.      If Defendant is not a citizen of the United States, a plea of guilty may result in deportation, removal, and/or exclusion from admission to the United States, or the denial of naturalization.  A plea of guilty may also result in Defendant being permanently barred from legally entering the United States after being deported, removed, and/or excluded.  Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Cooperation

5.      The parties understand this Agreement carries the potential for a motion for departure under § 5K1.1 of the United States Sentencing Guidelines.  Defendant understands and agrees that whether such a motion is filed will be determined solely

3

by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to § 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 27-44 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.      Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant, including, but not limited to, health care fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)     Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas and Defendant, and that it does not bind any other United States Attorney or other component or unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation.

(f)     Should the recommended departure, if any, not meet Defendant's expectations, Defendant understands he remains bound by the terms of this Agreement and that he cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal

7.     Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.   Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United

States Code, section 2255.  In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.    In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce his guilty plea** and is binding on neither the United States, the Probation Office, nor the Court.  The United States does not make any promise or representation concerning what sentence Defendant will receive.    Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court.  *United States v. Booker*, 125 S.Ct. 738 (2005).  Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.      Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

10.     The United States agrees to each of the following:

(a)     If Defendant pleads guilty to Count 1 and 23 of the Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this Plea Agreement, the United States will move to dismiss the original indictment and remaining counts in superseding indictment in *United States v. Yepremian, et al.*, H-cr-15-346s, against the Defendant at the time of sentencing;

(b)     At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment under § 3E1.1(a) of the Sentencing Guidelines should Defendant accept responsibility as contemplated by the Sentencing Guidelines (U.S.S.G.);

(c)     If Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will move for an additional one (1)-level downward adjustment based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense;

(d)     The Defendant and the United States agree to recommend to the Court that the intended loss amount under §2B1.1(b)(1)(H) of the United States Sentencing Guidelines is $12,531,426.73; and

(e)     The Defendant and the United States agree to recommend to the Court that the restitution amount to Medicare and Medicaid is $9,081,584.27.

**Agreement Binding - Southern District of Texas Only**

11.    The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the original indictment and the Superseding Indictment. This Plea Agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant.  It does not bind any other United States Attorney.  The United States will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices if requested.

**United States' Non-Waiver of Appeal**

12.    The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines.  Specifically, the United States reserves the right:

(a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)    to set forth or dispute sentencing factors or facts material to sentencing;

(c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)    to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a); and

(e)    to appeal the sentence imposed or the manner in which it was determined.

8

### Sentence Determination

13.   Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a).  Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the discretion of the sentencing judge.  If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

### Rights at Trial

14.   Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

(a)     If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.  The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.  In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.   If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.  However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

15.     Defendant is pleading guilty because he is guilty of the charges contained in Count 1 and Count 23 of the Superseding Indictment.  If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.  The following facts, among others, would be offered to establish Defendant's guilt with respect to the conspiracy and health care fraud, charged in the instant case:

16.     Defendant Yepremian, beginning in 2007, opened a series of clinics in Houston and Conroe, and a Houston lab.  These clinics and lab billed for medically unnecessary diagnostic tests and blood work on Medicare and Medicaid patients.

The lab was called Empire Clinical Laboratory, Inc.; the clinics were called Crawford Medical Services, Inc.; Arca Medical Clinic, Inc.; Care Family Practice, Inc.; and Mid-City Healthcare. All were located in Houston, Texas, except for Arca which began in Conroe, Texas and was later moved to Houston.

17.    Yepremian actively and knowingly conspired with many so called "marketers," including but not limited to co-defendants Michael Wayne Wilson, Eddie Wayne Taylor, Eric Johnson and Jermaine Doleman. Yepremian would pay the marketers to bring patients to his clinics and lab for testing. The marketers would in turn pay the patients for allowing Yepremian to bill their personal Medicare and Medicaid numbers. Sometimes, Yepremian paid the patients directly. Count 23 presents a patient, T.M., who was paid $100 directly by Yepremian on July 12, 2012 for allowing medically unnecessary blood work to be billed on T.M.'s Medicare number on that same date.

18.    Yepremian and others under his direction always researched the Medicare and Medicaid patients before he would allow the "marketer" to bring a patient to the clinics and lab for the medically unnecessary diagnostics and tests. Numerous documents from a data base were recovered in the search warrant of the clinics and lab, which showed the type of medical insurance a patient had. Yepremian would not allow marketers to bring any patients who had private

insurance because Yepremian had a hard time getting claims paid on those patients. Also, Yepremian would not allow a patient to be billed upon who had been recently seen by one of his clinics. He would carefully stage the office visits two to three months apart and shift the patients back and forth between his clinics in an effort to fool Medicare and Medicaid.

19.     Yepremian held two of the businesses – Care Family and Empire Lab - - in his name where he was the Medicare provider. He held the other clinics – Arca, Crawford and Mid-City -- in the names of nominee owners or straw owners in an effort to fool Medicare and Medicaid. The nominee owners were listed on the Medicare and Medicaid applications as the owners and operators of the clinics. However, at all times, Yepremian controlled the bank accounts where the Medicare and Medicaid funds were deposited for all the clinics and lab. Thus, Medicare and Medicaid did not know that one person, Yepremian, controlled all the clinics and the blood lab, and received all the paid claims. Yepremian's bank records show that he paid the nominee owners, some of whom also worked at the clinics and lab.

20.     Yepremian employed two physicians, Defendants Dr. Harding Ross and Dr. Faiz Ahmed, and one foreign medical graduate, Defendant Bompa Mompiere, who was not licensed in the State of Texas. Defendants Ross and Ahmed knowingly ordered medically unnecessary diagnostic tests and blood work as part of

the conspiracy. Additionally, Mompiere ordered medically unnecessary diagnostics tests and blood work on patients at the Arca clinic in Conroe, and but the claims would be billed as if one of the defendant physicians treated the patients. Yepremian knew Mompiere was unlicensed and allowed him to see and treat patients without any supervision by his licensed physicians.

21.     Also as part of the conspiracy, Yepremian also traded signed, medically unnecessary home health care certifications, which were signed by co-conspirators Ross and Ahmed, for blood work on those patients. Numerous home health care companies fraudulently paid Yepremian for the "485s" – a term for the home health care certifications. Yepremian allowed Mompiere and an aide to visit the companies and draw blood from the patients.

22.     Items recovered from the search of the various clinics showed that Yepremian kept records of the numbers of patients seen at the various home health care companies by Mompiere and how much Yepremian paid Mompiere for these visits. Search warrant materials showed Yepremian also kept records of how much he paid for each patient and what marketer was associated with each patient.

23.     At the various clinics, sign-in sheets were kept that indicated which patient was brought by a specific marketer in order to avoid disputes among the marketers over which patient belonged to which marketer. The officer worker would

pay the marketer after the patient had been seen and tested. Frequently the diagnostic tests were performed before the patient was seen by the physician.

24.    Yepremian also routinely moved the proceeds of the health care fraud into bank accounts held in his name, his wife and his daughters' names. From these accounts, he purchased a Houston home on Stargate in his daughter's name, as listed in the superseding indictment, and purchased numerous trucks for his trucking business called Arcca.

25.    As a result of this conspiracy, Defendant Yepremian and his co-conspirators billed Medicare and Medicaid approximately $12,531,426.73, and were paid approximately $9,081,584.27, of which $197,675.90 paid by Medicaid to the defendant.

### Breach of Plea Agreement

26.    If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any

14

information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines

27.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest.  Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

28.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

29.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.  Defendant also agrees to direct any banks, which have custody of his assets to deliver all funds and records of such assets to the United States.

30.     Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

31.     Defendant agrees to pay full restitution of at least $9,081,584.27, for losses to the victims of the conspiracy, regardless of the counts of conviction. Defendant stipulates and agrees that as a result of his criminal conduct Medicare and Medicaid paid approximately $9,081,584.27, for fraudulent claims.

32.  Defendant understands and has been advised that without his agreement and consent, a district court's restitution award generally can encompass only those losses that resulted directly from the offense for which the defendant was convicted, including harm resulting from the entire charged conspiracy or scheme.

However, Defendant specifically agrees as a part of this Plea Agreement that the Court may include restitution arising from all his relevant conduct, not limited to that arising from the offense of conviction alone, and including the separately charged conspiracy.

33.  The Defendant further understands and agrees that the restitution amount for the conspiracy may be ordered to be joint and several with his co-defendants in the superseding indictment.

34.    Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim(s).  Defendant agrees that restitution imposed by the Court will be due and payable immediately, and that Defendant will not attempt to avoid or delay payment.  Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture and Money Judgment

35.  Defendant stipulates and agrees that all of the property listed in the Superseding Indictment's Notice of Forfeiture and the Supplemental to Notice of Forfeiture is subject to forfeiture, and Defendant agrees to the forfeiture of that property.    In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:

17

(a)   The seven seized sums of money listed in the Supplement to Notice of Forfeiture;

(b)   The trucks and trailers and tanks listed on Attachment A; and

(c)   The real property at 3114 Stargate Court, Houston, Texas, held in the name of his daughter, A.J.Y.

36.   The Defendant further agrees to the interlocutory sale of the trucks, trailers and tanks and the interlocutory sale of the real property, at any time subsequent to the signing of this Plea Agreement.  The net sales proceeds will be a substitute *res* subject to forfeiture in place of the property that was sold.

37.   The Defendant agrees to request that his daughter sign a Special Warranty Deed upon request by the United States, and he shall cooperate in the Government's interlocutory sale of the real property.  The Defendant will reasonably maintain the property until he and any family members move out, and the real property will be vacated within forty-five (45) days of the date this Plea Agreement is signed.  The Defendant will remove all personal property from the premises and will sign or cause to be signed upon request any documents necessary to effectuate the sale and transfer of the real property.  The Defendant will provide advance notice to the Government prior to move-out so that the real property can be properly secured.

38. Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of at least $9,081,584.27, against him and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for that amount against him and in favor of the United States of America. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of his property, or his/her interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

39. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

40. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

41. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

42.     Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

43.     This written Plea Agreement, consisting of 23 pages, including the attached addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the United States, Defendant, and his counsel.  No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement.  Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

44.    Any modification of this Plea Agreement must be in writing and signed by all parties.


Filed at _Houston_, Texas, on _March 4_, 2016.


_(signature)_
Defendant


Subscribed and sworn to before me on _March 4_, 2016.


DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By:    _(signature)_
Deputy United States District Clerk


APPROVED:


KENNETH MAGIDSON
United States Attorney

By:    _(signature)_                    _(signature)_
Suzanne Bradley                    Heather Peterson
Special Assistant U.S. Attorney    Defense Counsel
Southern District of Texas


21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **CRIM. NO.  15-cr-346S** |
| | § | |
| **VS.** | § | |
| | § | |
| **MKRTICH M. YEPREMIAN (1),** | § | |
| **A.K.A. MIKE YEPREMIAN,** | § | |
| **Defendant** | § | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to Defendant his rights with respect to the pending

Indictment.  I have reviewed the provisions of the United States Sentencing

Commission's <u>Guidelines Manual</u> and <u>Policy Statements,</u> and I have fully and

carefully explained to Defendant the provisions of those Guidelines which may

apply in this case. I have also explained to Defendant the Sentencing Guidelines

are only advisory and the court may sentence Defendant up to the maximum

allowed by statute per count of conviction.  Further, I have carefully reviewed

every part of this Plea Agreement with Defendant.  To my knowledge, Defendant's

decision to enter into this Agreement is an informed and voluntary one.

Date: 3/4/16

_____
Heather Peterson
Attorney for Defendant

22

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment pending against me.   My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read and carefully reviewed every part of this Plea Agreement with my attorney.   I understand this Agreement and I voluntarily agree to its terms.

_____          Date: 3/4/16

Mkrtich M. Yepremian